USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/11/25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
                                                                  :
ELOISE HOLDINGS, LLC,                                             :
                                                                  :
                              Plaintiff,                  :        1:23-cv-7513-GHW
                                                                  :
                    - v -                                 :        MEMORANDUM
                                                                  :        OPINION & ORDER
MT. HAWLEY INSURANCE COMPANY, *et al.*,                           :
                                                                  :
                              Defendants.                 :
                                                                  :
----------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

      Plaintiff Eloise Holdings, LLC ("Eloise Holdings") owns a two-story commercial office building in Tampa, Florida. Defendants Mt. Hawley Insurance Company and Renaissance Re Syndicate 1458 Lloyd's (collectively "Mt. Hawley") insured the building. On March 15, 2022, a storm hit Tampa. The storm damaged the building's roof, which in turn caused water damage to the building's interior. Eloise Holdings submitted a claim. The insurance policy, however, contains a so-called "anti-concurrent causation clause" that bars coverage where faulty workmanship or inadequate repairs contributed to a claimed loss. Mt. Hawley's investigation revealed just that. The property's roof had been improperly constructed, and the claimed interior damage was caused by long-term, repeated water intrusion over the years. So Mt. Hawley denied the claim. Eloise Holdings sued.

      After the completion of discovery, Mt. Hawley filed this motion for partial summary judgment. Rather than filing an opposition to the motion, counsel for Eloise Holdings remained silent. Because the undisputed record is clear that the claimed interior damage falls squarely within the insurance policy's anti-concurrent causation clause, Mt. Hawley's motion for partial summary judgment with respect to Eloise Holdings's claims for interior water damage is GRANTED.

I.  **BACKGROUND**

   A.  **Facts**

Plaintiff Eloise Holdings, LLC ("Eloise Holdings") owns a two-story commercial office building in Tampa, Florida (the "Property"). *See* Dkt. No. 34 ("56.1 Statement") ¶ 3. Defendants Mt. Hawley Insurance Company and Renaissance Re Syndicate 1458 Lloyd's are insurers (collectively "Mt. Hawley"). *See id.* ¶ 1; Dkt. No. 1 (Notice of Removal) ¶¶ 8–9. Mt. Hawley issued a commercial property policy that insured the Property from October 30, 2021 to November 28, 2022 (the "Policy"). 56.1 Statement ¶ 1.

On March 15, 2022, a storm hit Tampa that damaged the Property. *Id.* ¶ 10. Eloise Holdings filed a claim for the damage that it contended resulted from the storm (the "Claim"). *Id.* The Claim included a request for reimbursement for repairs to the Property's interior. *See* Dkt. No. 36 (Campen Declaration) Exhibit A-2.[1]

Mt. Hawley mounted an investigation of the Claim. Mt. Hawley "retained multiple expert consultants to inspect the Property" and assist with its investigation. *Id.* ¶ 11. One such expert was James Plantes, a professional engineer. *Id.* After Mr. Plantes inspected the Property, he issued a report "concluding that the Property had not been damaged by wind, but instead exhibited an old, deteriorated roof that had exceeded its service life along with long-term, repeated water intrusion." *Id.* ¶ 12. After completing its investigation, Mt. Hawley declined coverage for the Claim. *Id.*

The Property's roof, which Mr. Plantes found to be deteriorated, was made of "a flat, modified bitumen membrane, which was installed over the Property's original built-up gravel

---

[1] Mt. Hawley includes in its 56.1 Statement the following assertion: "When asked to quantify the amount and categories of its damages during Plaintiff's 30(b)(6) deposition, Plaintiff identified three categories of damages on the record: (1) the amount Plaintiff paid to replace the roof in 2024 ($187,900); (2) the cost to repair interior water damage; and (3) the cost of roof tarping to prevent further interior water damage performed by a company called Smart Tarp." 56.1 Statement ¶ 25. The assertion cites to "Exhibit B-6, Foster Depo." *Id.* However, the Court does not have this exhibit. Consequently, the Court does not rely on this statement.

roof." *Id.* ¶ 4. "The modified bitumen membrane was in poor condition" when Eloise Holdings acquired the Property in 2013. *Id.* ¶ 6. In 2014, in an attempt to fix the leaking roof, Eloise Holdings "had a temporary elastomeric coating applied over the modified bitumen membrane." *Id.* A contractor named David Giddens performed the repairs. *Id.* ¶¶ 34–35. According to Mr. Giddens, the roof was "very old." *Id.* ¶ 37. In his opinion, coating the roof to fix the leaks—rather than replacing it altogether—was a "Band-Aid" solution. *Id.* This was because the roof's base layer was gravel, so "if someone gets up there walking on it and pokes a hole in [the coating] or anything of that nature . . . there's no telling how long [the coating] would last." *Id.* Mr. Giddens explained that coating a gravel roof can also cause pooling of water that "allows water to sit" and "eventually allows the seams to separate," leading to leaking. *Id.* In his opinion, the roof should have been replaced in 2014. *Id.* In connection with this litigation, Eloise Holdings also hired a causation expert, Grant Stokes, who agreed that "the gravel's got to be removed . . . if you're going to go over a gravel roof" with a covering. *Id.* ¶¶ 13, 40.

The Policy at issue in this dispute expressly limits coverage in certain circumstances. The Policy contains a section titled "Causes of Loss — Special Form," which reads as follows:

C. Limitations

The following limitations apply to all policy forms and endorsements, unless otherwise stated.

1. We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.
. . .
   c. The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

   (1) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure; or

   (2) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters. However, *we will not pay for any loss or damage, caused in whole or in part,*

3

> *directly or indirectly by, resulting from, contributed to or made worse by, or in connection with, any of the following causes of loss, regardless of any other cause or event that contributes concurrently or in any sequence to the loss*: wet or dry rot; wear and tear; rust; corrosion; decay; deterioration; hidden or latent defect; settling; cracking; shrinking or expansion; *or faulty, inadequate or defective planning, design, specifications, workmanship, repair, construction, materials, or maintenance.*

*Id.* ¶ 2 (emphasis added).[2]

According to Mt. Hawley's causation expert, the damage at issue was "contributed to by the improper installation of the modified bitumen roof membrane over the original gravel roof, which exacerbated the damage . . . ." *Id.* ¶¶ 42-43. Eloise Holdings's expert, Mr. Stokes, agreed that installing a "covering" over a compromised, gravel roof "like we see here" would "definitely" make the roof "more susceptible to wind and storm damage." *Id.* ¶ 40. After the storm and during the investigation of the Claim, Plaintiff hired a company called Smart Tarp to install tarps over the roof to "mitigate further interior water damage." *Id.* ¶¶ 8, 23.

### B. Procedural History

Eloise Holdings filed this action in the New York State Supreme Court, New York County on June 27, 2023. Notice of Removal ¶ 1. In its complaint, Eloise Holdings asserted one cause of action for breach of the Policy. *Id.* at ECF pp. 9–12 (the "Complaint"). On August 24, 2024, Mt. Hawley removed the action to federal court. Notice of Removal. Mt. Hawley answered on August 30, 2023. Dkt. No 9. One of Mt. Hawley's affirmative defenses relies on the Policy's anti-concurrent causation clause. It asserts that the Policy exempts from coverage damage to the Property's interior that is "caused in whole or in part, directly or indirectly, resulting from, contributed to or made worse by, or in connection with . . . faulty, inadequate, or defective design, workmanship, repairs, materials, or maintenance, regardless of any other cause or event that contributes concurrently or any sequence to the loss." 56.1 Statement ¶ 26.

---

[2] This quote reflects the provision as amended. *See* 56.1 Statement ¶ 2.

The Court held an initial pretrial conference for the case on October 31, 2023, and issued a case management plan and scheduling order later the same day. Dkt. No. 15. That order launched the parties into discovery. Fact discovery was originally scheduled to conclude on February 28, 2024, *id.*, but, at the request of the parties, was later extended to conclude on April 30, 2024. Dkt. No. 18. On April 5, 2024, Mt. Hawley requested a further extension of time to complete discovery, arguing that "Plaintiff has delayed depositions and withheld critical documents responsive to Defendants' discovery requests . . . ." Dkt. No. 19. Eloise Holdings did not oppose the request. *Id.* Mt. Hawley's deadline to complete fact discovery was extended to June 30, 2024. Dkt. No. 21. Eloise Holdings's deadline to complete fact discovery remained April 30, 2024. *Id.* Ultimately, both parties took advantage of the opportunity to conduct discovery. Both sides retained experts.

Following the close of discovery and failed settlement negotiations, Mt. Hawley sought leave to file a motion for partial summary judgment with respect to the denial of coverage under the Policy's anti-concurrent causation provision. Dkt. No. 30. The Court held a conference with counsel for both parties to discuss the anticipated motion on October 18, 2024. With the input of counsel for both parties, the Court established the following briefing schedule for the motion for summary judgment: Mt. Hawley's motion was due on November 18, 2024; Eloise Holdings's opposition was due within four weeks after service of Mt. Hawley's motion; and any reply was due no later than two weeks after service of Eloise Holdings's opposition. Dkt. No. 32. During the pre-motion conference, the Court reminded the parties that failure to respond adequately to their adversary's 56.1 statement would lead the Court to treat the uncontested fact as true.[3]

---

[3] The Court warned: "[I]f you disagree with the fact that is asserted by your adversary, because this is summary judgment, it is your obligation to present to the Court opposing facts. You must state your view of those opposing facts, and you must point to specific record evidence that supports your view of the relevant facts . . . Again, you cannot categorically deny a statement of fact in a 56.1 statement. If you do, it will be treated as an admission. We are at summary judgment, and this is an evidence testing process. If your adversary says, for example, that the damage to the interior of the building was the result in part or was made worse by the defective condition of the roof, the Court will be looking for some statement of fact that controverts the assertion . . . ." October 18, 2024 Transcript, Dkt. No. 32, at 13:19-14:13.

Mt. Hawley timely filed its motion for summary judgment on November 18, 2024. Dkt No. 33 (notice of motion). In support of its motion, Mt. Hawley filed a 56.1 statement of undisputed facts. *See* 56.1 Statement. Mt. Hawley also filed three declarations that attached, among other things, the Policy and the transcripts of several depositions. *See* Campen Declaration; Dkt. No. 37 (Smith Declaration); Dkt. No. 38 (Plantes Declaration). Mt. Hawley's memorandum of law contended that the undisputed facts established during discovery, including testimony of Eloise Holdings's expert, entitled it to summary judgment with respect to the claim for interior water damage and the temporary roof tarping. Dkt. No. 35 (memorandum of law or "Mem.").

Eloise Holdings did not file an opposition to the motion for partial summary judgment. Given the lack of opposition by Eloise Holdings, Mt. Hawley did not file a formal reply.

## II.    LEGAL STANDARD

### A.    Motions for Summary Judgment Generally

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" (quoting former Fed. R. Civ. P. 56(c))). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

The party moving for summary judgment bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008).

If that initial burden is satisfied, the burden "shifts to the party resisting summary judgment to present evidence sufficient to satisfy every element of the claim." *Id.* To defeat a motion for summary judgment, the non-movant "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting former Fed. R. Civ. P. 56(e)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586 (citations omitted), and she "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks and citation omitted).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). The Court's job is not to "weigh the evidence or resolve issues of fact." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 254 (2d Cir. 2002) (citation omitted). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citation omitted).

### B. Unopposed Summary Judgment Motions

Federal Rule of Civil Procedure 56 "does not allow district courts to automatically grant summary judgment on a claim simply because the summary judgment motion, or relevant part, is unopposed." *Jackson v. Federal Express*, 766 F.3d 189, 194 (2d Cir. 2014). Before granting an unopposed summary judgment motion, "the district court must ensure that each statement of

material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed." *Id.* "And, of course, the court must determine whether the legal theory of the motion is sound." *Id.* "To sum up, when a party, whether *pro se* or counseled, fails to respond to an opponent's motion for summary judgment, a district court may not enter a default judgment." *Id.* at 197. "Rather, it must examine the movant's statement of undisputed facts and the proffered record support and determine whether the movant is entitled to summary judgment." *Id.*

Rule 56 "requires that a grant or denial of summary judgment is accompanied by an explanation." *Id.* at 196. "However, absent some indication of a material issue being overlooked or an incorrect legal standard being applied, [the Second Circuit does] not require district courts to write elaborate essays using talismanic phrases." *Id.* at 196–97. When a counseled party elects not to oppose a motion for summary judgment, "there is no need for a district court to robotically replicate the defendant-movant's statement of undisputed facts and references to the record . . . ." *Id.* at 197. "[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." *Id.* at 198.

### C. Interpretation of Insurance Contracts under New York Law

New York law governs this dispute. The Policy has a New York choice of law provision. 56.1 Statement ¶ 2. The Policy reads: "All matters arising hereunder including questions relating to the validity, interpretation, performance and enforcement of this Policy shall be determined in accordance with the law and practice of the State of New York (notwithstanding New York's conflicts of law rules)." *Id.* The parties agree on this point. Mt. Hawley contends that New York law applies. The Complaint also states that New York law applies, citing the Policy's choice of law

clause. Complaint ¶ 8. The parties' "consent is, of course, sufficient to establish the applicable choice of law." *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009).

Under New York law, the first place to look "[i]n determining a dispute over insurance coverage" is "the language of the policy." *Raymond Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 5 N.Y.3d 157, 162 (2005) (quoting *Consolidated Edison Co. of N.Y. v Allstate Ins. Co.*, 98 N.Y.2d 208, 221 (2002)). Ambiguous language is resolved "in favor of the insured." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 201 (2d Cir. 2010). "But if an insurance policy is 'clear and unambiguous,' it is to be given its 'plain and ordinary meaning,' and courts are to refrain from rewriting the agreement." *Id.* (quoting *Dalton v. Harleysville Worcester Mut. Ins. Co.*, 557 F.3d 88, 90 (2d Cir. 2009)). Accordingly, the meaning of a policy's unambiguous terms must be determined "without reference to extrinsic materials." *Goldman v. White Plains Ctr. for Nursing Care, LLC*, 11 N.Y.3d 173, 176 (2008).

Whether an insurance policy's language is ambiguous "is a question of law to be resolved by the courts." *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015) (quotation omitted); *accord Haber v. St. Paul Guardian Ins. Co.*, 137 F.3d 691, 695 (2d Cir. 1998). "Ambiguity is determined by looking within the four corners of the document, not to outside sources." *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396 (2d Cir. 2009) (quotation omitted). A provision in the policy is ambiguous if "there is a reasonable basis for a difference of opinion as to [its] meaning." *Selective Ins. Co. of Am. v. Cnty. of Rensselaer*, 26 N.Y.3d 649, 655–56 (2016). It is unambiguous if there is none. *Id.* at 655.

Under New York Law, "[w]hen insurance contracts contain an exclusion provision, '[t]he insurer generally bears the burden of proving that the claim falls within the scope of an exclusion . . . [by] establish[ing] that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case.'" *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 255 F. Supp. 3d 443, 453 (S.D.N.Y. 2015), *aff'd*, 650 F. App'x 70 (2d Cir. 2016)

9

(alterations in original) (quoting *Ment Bros. Iron Works Co. v. Interstate Fire & Cas. Co.*, 702 F.3d 118, 121 (2d Cir. 2012)).  "Once the insurer establishes that an exclusion applies, however, New York law has evolved to place the burden of proof on the insured to establish the applicability of an *exception to the exclusion.*"  *Ment Bros. Iron Works Co.*, 702 F.3d at 121 (emphasis original).

### III.   DISCUSSION

Summary judgment is appropriate here because the Policy's unambiguous anti-concurrent causation clause excludes coverage of the interior damage allegedly sustained as a result of the March 15, 2022 storm.  Accordingly, Defendant's motion for partial summary judgment is granted.

#### A.   Eloise Holdings Has Waived Any Opposition and Has Admitted the Facts Detailed in Mt. Hawley's 56.1 Statement

Eloise Holdings has elected not to oppose Mt. Hawley's motion for partial summary judgment.  The deadline for Eloise Holdings to file its opposition was December 16, 2024. Dkt. No. 32.  During the pre-motion conference, the Court reminded the parties that failure to respond adequately to their adversary's 56.1 statement would lead the Court to treat the uncontested fact as true.  Because Eloise Holdings is counseled, attended and presented arguments at the pre-motion conference, but elected not to oppose the motion for months despite continuing to litigate the case, the Court concludes that it is appropriate to consider Eloise Holdings to have abandoned any possible opposition to Mt. Hawley's motion for partial summary judgment.  *Jackson*, 766 F.3d at 196.

Moreover, the Court deems the assertions in Mt. Hawley's 56.1 Statement to be admitted. "The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties."  *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001), *abrogated in part on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009).  Local Rule 56.1 requires a party moving for summary judgment to submit "a separate, short and concise statement" setting forth material facts

as to which there is no genuine issue to be tried. Local Rule 56.1(a). A party opposing summary judgment must respond with a statement of facts as to which a triable issue remains. *See* Local Rule 56.1(b). The facts set forth in a moving party's statement "will be deemed to be admitted unless controverted" by the opposing party's statement. Local Rule 56.1(c).

"[A] non-response [to a motion for summary judgment] runs the risk of unresponded-to statements of undisputed facts proffered by the movant being deemed admitted." *Jackson*, 766 F.3d at 194; *see also id.* at 196 ("[T]he opponent to such a motion is free to ignore it completely, thereby risking the admission of key facts and leaving it to the court to determine the legal merits of all claims or defenses on those admitted facts."). Here, Eloise Holdings accepted that risk by opting not to oppose the motion or to controvert the facts stated in Mt. Hawley's 56.1 statement. Eloise Holdings did so notwithstanding the fact that it is represented by counsel and the fact that the Court specifically reminded parties of the consequences of failure to controvert properly facts asserted in their opponent's 56.1 statement. It is appropriate for the Court to deem the facts asserted in Plaintiff's 56.1 Statement to be admitted under these circumstances.[4]

### B. Mt. Hawley Is Entitled to Partial Summary Judgment Because the Policy Unambiguously Excludes the Claimed Coverage

The Policy's anti-concurrent causation clause excludes coverage of the Property's interior damage because it is undisputed that the damage was made worse by, or sustained in connection with, faulty workmanship and inadequate repairs. The anti-concurrent causation clause is unambiguous. It provides that even if a storm damaged the Property, the Policy excludes coverage if any of the listed causes also contributed to that damage. "New York courts have interpreted [anti-concurrent clause provisions] to mean that where a loss results from multiple contributing causes, coverage is excluded if the insurer can demonstrate that any of the concurrent or contributing causes

---

[4] The Court has reviewed the record presented to the Court in support of the statements of fact contained in Mt. Hawley's 56.1 Statement and concludes that the relevant facts are adequately supported by record evidence.

11

of loss are excluded by the policy." *Lantheus Med. Imaging, Inc.*, 255 F. Supp. 3d at 459; *see also Alamia v. Nationwide Mut. Fire Ins. Co.,* 495 F. Supp.2d 362, 368 (S.D.N.Y. 2007) ("'[A]n 'anti-concurrent' clause . . . excludes coverage for damage caused by an excluded peril even when covered perils also contribute to the damage.").

Here, the Policy plainly excludes losses to "[t]he interior of any building or structure" unless the building first sustains a covered loss, but makes clear that Mt. Hawley

> will not pay for any loss or damage, caused in whole or in part, directly or indirectly by, resulting from, contributed to or made worse by, or in connection with, any of the following causes of loss, regardless of any other cause or event that contributes concurrently or in any sequence to the loss: wet or dry rot; wear and tear . . . deterioration; . . . or faulty, inadequate or defective planning, design, specifications, workmanship, repair, construction, materials, or maintenance.

56.1 Statement ¶ 2. Consequently, Mt. Hawley is not obligated to cover damage to the Property's interior if the damage was caused even indirectly by—or contributed to, or sustained in connection with—faulty, inadequate or defective workmanship, repair, construction, materials, or maintenance.

The anti-concurrent causation clause precludes coverage for the interior damage because it is undisputed that installing the modified bitumen roof membrane over the original gravel roof (and the attempted repairs thereto) constituted "faulty, inadequate or defective workmanship, repair, construction, materials, or maintenance" that contributed to or made the claimed damage worse. The Court need not "robotically replicate the []movant's statement of undisputed facts and references to the record . . . ." *Jackson*, 766 F.3d at 197. The Court has reviewed the record presented in support of the motion and concludes that the facts presented in support of the motion establish that the interior water damage and the post-storm roof tarping are both excluded under the Policy. The Court will merely highlight the critical facts that underpin this conclusion.

It is undisputed that the roof's poor condition was the result of "faulty, inadequate or defective workmanship, repair, construction, materials, or maintenance." 56.1 Statement ¶ 2.[5] Here, two contractors hired by Eloise Holdings who "were familiar with the condition of the roof in 2013 when Plaintiff purchased the Property, testified that the modified bitumen roof covering should not have been installed over the original gravel roof because it resulted in ponding water, separated seams, and penetrations." Mem. at 16. One of those contractors, Rick Jennings, worked at the Property from 2013 until 2021 and has experience building "thousands" of roofs. *See* 56.1 Statement ¶¶ 27–28. Mr. Jennings admitted at his deposition that, when the building was purchased in 2013, he "could tell that there were some issues with the way that they did the latest roof," referring to the installation of the bitumen membrane over the gravel. *Id.* ¶ 32; *see also* Smith Declaration Exhibit B-1. When asked specifically what was wrong with the roof installation, he replied "you don't install a second roof on top of gravel." 56.1 Statement ¶ 33. Mr. Jennings testified that "they should have at least torn off the gravel, so that was probably the worse [sic] part of the roof when we bought it." *Id.*

The second contractor, David Giddens, worked on the roof in 2014 because it was leaking. *Id.* ¶¶ 34–36. He testified that the roof was "a very old roof with gravel. You could feel the gravel underneath it." *Id.* ¶ 36. He added that "a perfect scenario" for the roof would have been "if it had just been one torch-down roof without gravel underneath it . . . ." *Id.*

---

[5] Because the Policy does not define key terms—"faulty," "inadequate," "workmanship," and "maintenance"—the Court "looks to the dictionary to provide the everyday, common meaning of the term." *Lantheus Med. Imaging, Inc.*, 255 F. Supp. 3d at 454 (citing *Fed. Ins. Co. v. Am. Home Assur. Co.,* 639 F.3d 557, 567 (2d Cir.2011) ("It is common practice for the courts of New York State to refer to the dictionary to determine the plain and ordinary meaning of words to a contract." (internal quotation marks, alterations and citations omitted))). Faulty means "marked by fault or defect: imperfect." *Faulty*, Merriam-Webster, https://www.merriam-webster.com/dictionary/faulty. Inadequate means "not adequate[;] not enough or good enough[;] insufficient." *Inadequate*, Merriam-Webster, https://www.merriam-webster.com/dictionary/inadequate. Workmanship is defined as "the art or skill of a workman; the quality imparted to a thing in the process of making." *Workmanship* 2, Merriam-Webster, https://www.merriam-webster.com/dictionary/workmanship. Maintenance means "the upkeep of property or equipment." *Maintenance* 3, Merriam-Webster, https://www.merriam-webster.com/dictionary/maintenance.

Indeed, Eloise Holdings's own expert, Mr. Stokes, agreed that "the gravel's got to be removed . . . if you're going to go over a gravel roof." *Id.* ¶ 40. The evidence makes clear, therefore, that the installation of the modified bitumen membrane over the original gravel layer was faulty workmanship.

The roof's maintenance—adding a coating to repair the leaks—was also inadequate. Giddens testified that merely coating the roof to fix the leaks—rather than replacing it altogether—was a "Band-Aid" solution. *Id* ¶ 36. In his opinion, the roof should have been replaced in 2014. *Id.* ¶ 38. Consequently, the upkeep of the property was insufficient. The roof needed to be replaced, rather than coated. The undisputed facts therefore demonstrate that the roof also suffered from "faulty, inadequate or defective . . . repair, . . . materials, or maintenance."

It is also undisputed that the claimed interior water damage was contributed to, made worse by, or sustained in connection with this faulty workmanship, repairs, and maintenance. Mt. Hawley's causation expert concluded that the interior damage was contributed to and exacerbated by the improper installation of the modified bitumen roof membrane over the original gravel roof. *Id.* ¶ 43. Eloise Holdings's own expert, Mr. Stokes, agreed that installing a covering over a compromised, gravel roof "like we see here" would "definitely" make the roof "more susceptible to wind and storm damage." *Id.* ¶ 40. The evidence presented by both experts support the conclusion that the "faulty, inadequate or defective workmanship, repair, construction, materials, or maintenance" at the very least made the roof more prone to the storm damage. The Court has no trouble concluding that the roof's damage, which resulted in the claimed interior water damage, was "made worse by" or sustained "in connection with" the faulty workmanship and repairs specifically contemplated by the anti-concurrent causation.

Although the experts disagree on whether wind also contributed to the damage, this is not material. Even if wind did contribute to the loss, the Policy does not cover the interior damage

14

because faulty workmanship was also a contributing factor. Based on this undisputed record, the roof damage that resulted in the claimed interior water damage was "directly or indirectly . . . contributed to or made worse by, or in connection with "faulty, inadequate or defective planning, design, specifications, workmanship, repair, construction, materials, or maintenance." *Id.* ¶ 2. Eloise Holdings's claims with respect to the interior water damages is not covered because of the Policy's anti-concurrent causation exclusion.

Additionally, Mt. Hawley is also entitled to summary judgment with respect to the post-storm roof tarping. The Policy provides that Mt. Hawley "will not pay for any loss *that is a consequence* of loss or damage as described and limited in this section." *Id.* Here, the undisputed record demonstrates that the claimed interior water damage led Eloise Holdings to pay for tarping to stop further interior damage. The losses sustained by Eloise Holdings for the tarping are therefore "a consequence of" the excluded interior water damage. Mt. Hawley is therefore also entitled to summary judgment with respect to the post-storm roof tarping. The undisputed facts presented in the record clearly support Mt. Hawley's motion for summary judgment with respect to the claimed interior water damage and the post-storm tarping of the roof.

## IV. CONCLUSION

Mt. Hawley's motion for partial summary judgment with respect to the claimed interior water damage and the post-storm tarping of the roof is GRANTED. The Clerk of Court is directed to terminate the motion pending at Dkt. No. 33.

SO ORDERED.

Dated: March 11, 2025
New York, New York

GREGORY H. WOODS
United States District Judge